IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Bankruptcy No. 09-21638-JAD |
| | : | |
| ANGEL SMITH, | : | Chapter 7 |
| | : | |
| Debtor. | : | |
| _____X | : | |
| | : | |
| HOUSING AUTHORITY OF THE | : | |
| CITY OF PITTSBURGH, | : | Adversary No. 13-02171-JAD |
| | : | |
| Movant, | : | Doc. # 30 |
| | : | |
| v. | : | |
| | : | |
| ANGEL SMITH, | : | |
| | : | |
| Defendant. | : | |
| _____X | | |

### MEMORANDUM OPINION

The matter before the Court is a *Motion for Summary Judgment* (the "Motion") filed by the movant, the Housing Authority of the City of Pittsburgh (the "Housing Authority").  The matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (I), (M), and (O), and the Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157(a) and 1334.  For the reasons set forth below, the Motion is denied.

### I.

The defendant, Angel Smith (the "Debtor"), currently resides in a townhouse located at 7342 Upland Street, Pittsburgh, PA 15208 (the "Property"), along with her disabled twelve year old son, fourteen year old son, and fourteen year old daughter. (See Doc. # 28, ¶ 2; Doc. # 35, ¶ 2).  The Property is owned by the Housing Authority, and is part of the Homewood North Community.  (See id. at ¶¶ 5, 21).

On June 9, 2000, the Debtor entered into an initial rental agreement (the "2000 Lease") with the Housing Authority for the lease of federally subsidized

residential public housing located at 7339 Upland Street, Pittsburgh, PA 15208. (See Doc. # 1, ¶ 17; Doc. # 1, Exhibit A).    After defaulting under the 2000 Lease, the Housing Authority served upon the Debtor a lease termination notice (the "Termination Notice") on November 17, 2008, which listed the reason for lease termination as a "[f]ailure to pay monthly rent." (See Doc. # 35, ¶¶ 6, 7, Exhibit A).

The Housing Authority subsequently filed a *Landlord and Tenant Complaint* with Pennsylvania Magisterial District Court on December 17, 2008 (the "Magisterial Eviction Complaint"), alleging rental delinquencies and seeking possession of the rental property. (See Doc. # 35, Exhibit B).  A judgment was entered against the Debtor, which the Debtor timely appealed. (See Doc. # 35, ¶ 9).  Thereafter, on February 2, 2009, the Housing Authority filed a *Landlord and Tenant Complaint* with the Court of Common Pleas of Allegheny County (the "Common Pleas Eviction Complaint"), again seeking eviction of the Debtor based on her failure to pay rent. (See Doc. # 35, Exhibit C).  Regarding these complaints, there is nothing in the record to indicate that the Housing Authority sought the Debtor's eviction for on any reason other than unpaid rent.

The Debtor filed for relief under Chapter 13 of the Bankruptcy Code on March 10, 2009 (the "Petition Date"). (See Case No. 09-21638).  The Debtor asserts that she filed for bankruptcy "for the purpose of repaying rental arrears owed to the Housing Authority and retaining her housing," and filed a plan to that effect on April 3, 2009. (Doc. # 5, ¶ 4; see Case No. 09-21638, Doc. # 14).  As of the Petition Date, the Debtor was in default under the 2000 Lease. (See Doc. # 28, ¶ 9).  On or about June 11, 2009, the Debtor's Chapter 13 plan was confirmed, which required the Debtor to make monthly payments of $604.00 to the Housing Authority. (See Doc. # 31).  The

-2-

Debtor then filed an amended plan on December 2, 2009 to reflect a reduced monthly rent of $364.00, which was confirmed on February 11, 2010. (See Doc. ## 42, 46).

In May 2010, the Debtor executed an addendum to the 2000 Lease providing for the Debtor's and her family's relocation to the Property. (See Doc. # 1, Exhibit B). Thereafter, on October 1, 2010, the Housing Authority and the Debtor entered into a second rental agreement (the "Lease") for the Debtor's continued occupancy of the Property. (See Doc. # 28, ¶ 5; Doc. # 1, Exhibit C). The Lease carried forward all of the Debtor's delinquencies under the 2000 Lease pursuant to § 21.C, which states in part, "Tenant hereby agrees that [the Housing Authority] does not waive any remedies at law or in equity that [the Housing Authority] may have by reason of any such prior violation, breach or default including the right to evict Tenant for breaches of any prior Lease or Addendum thereto." (Doc. # 1, Exhibit C, § 21.C). The Debtor filed another amended plan to reflect a further reduced rental payment of $146.00, which was confirmed on November 8, 2010. (See Doc. ## 56, 67).

Pursuant to the terms the Lease, the Debtor is required to pay monthly rent on the first of each month and to notify the Housing Authority of any changes in income. (See Doc. # 1, Exhibit A, §§ 3.A, 8(B); Doc. # 1, Exhibit C, § 4). The Lease also requires the Debtor to participate in an annual Re-Determination of Eligibility, Rent, or Dwelling Size (the "Re-Determination"), whereby the "Tenant is required to provide complete and accurate information necessary for [the Housing Authority] to determine Tenant's eligibility for continued occupancy, whether the rent shall be the same, and the appropriateness of the dwelling size in accordance with the Housing Authority's Admissions and Continued Occupancy Policy." (See Doc. # 1, Exhibit C, § 8.A). To the extent that the Debtor's household annual income increases or decreases before the annual Re-Determination, the Lease requires the Debtor to

notify the Housing Authority within ten days of any change in overall household income. (See id. at § 8.B).

On November 10, 2011, the Housing Authority filed a *Motion for Relief From Stay* based on fact that the "Debtor . . . failed to make payments pursuant to her Chapter 13 Plan." (Case No. 09-21638, Doc. # 74, ¶ 11). At the hearing on the motion held on March 1, 2012, the Housing Authority represented that they were satisfied with an amended plan filed by the Debtor on November 23, 2011 and confirmed by the Court on February 3, 2012. (See Case No. 09-21638, Hearing Held in Courtroom D, March 3, 2012 (10:32AM)). As such, this *Motion for Relief from Stay* was denied without prejudice as withdrawn by order of court dated March 1, 2012. (See Case No. 09-21638, Doc. ## 74, 93).

On September 18, 2012, the Housing Authority again moved for relief from the automatic stay, this time because the Debtor both was not making regular plan payments and also had failed to complete the annual Re-Determination. (See Case No. 09-21638, Doc. # 96). A hearing was held on November 8, 2012, at which time the Court entered an adequate protection Order and continued the Housing Authority's second *Motion for Relief from Stay* to February 20, 2013. (See Case No. 09-21638, Doc. ## 115, 116).

The Debtor filed another amended plan "to try to make up for the plan arrears" on November 15, 2012. (Doc. # 5, ¶ 7; see also Case No. 09-21638, Doc. # 119). The Housing Authority filed an objection to this plan on December 12, 2012. (See Doc # 121). A conciliation conference was set for and held on January 17, 2012, at which point the bankruptcy case was converted to a case under chapter 7 due to the Debtor's inability to remain current on plan payments. An order was entered on February 21, 2013 converting the case and a chapter 7 trustee (the "Trustee") was

appointed the same day. (See Case No. 09-21638, Doc. ## 132, 136). At the time of conversion, the Debtor had not cured her pre-petition arrears under the Lease and owed $9,928.25 to the Housing Authority. (See Doc. ## 28, ¶ 15; 1, ¶ 54). The Trustee never assumed or rejected the Lease within the sixty day time frame specified in 11 U.S.C. 365(d)(1). (See Doc. # 1, ¶¶ 64, 65). The Housing Authority filed a *Motion to Withdraw its Motion for Relief from Stay* on March 18, 2013. (See Case No. 09-21638, Doc. # 147).

The Housing Authority initiated this Adversary Proceeding by filing a *Complaint for Declaratory Relief* on April 25, 2013 (the "Complaint"). Through the Complaint, the Housing Authority seeks a declaration that 11 U.S.C. § 525(a) does not prevent it from evicting the Debtor, where the Lease had not been assumed, all pre-petition delinquencies had not been cured, and the Debtor had not provided adequate assurances of future performance under the lease. (See Doc. # 1, p. 1). The Housing Authority noted in its Complaint that the Debtor's default was due to failure to pay rent and failure to disclose an increase in overall household income. (Doc. # 1, ¶ 32).

The Debtor filed a *Motion to Dismiss* on May 28, 2013 (see Doc. # 5) which the Housing Authority opposed (see Doc. ## 8, 9). A hearing on the matter was held on June 25, 2013, and the motion was denied through a Memorandum Opinion and Order filed July 18, 2013. (See Doc. ## 11, 12, 13).

The Debtor filed her answer to the Complaint (the "Answer") on August 14, 2013. (See Doc. # 18). The parties filed a *Joint Discovery Plan* on September 10, 2013, which was approved by the Court on September 12, 2013. (See Doc. ## 22, 23). A *Stipulation of Undisputed Facts* was filed on October 31, 2013. (See Doc. # 28).

On November 22, 2013, the Housing Authority filed the instant Motion before the Court and a brief in support, arguing that there is no genuine issue of material

fact and that the Housing Authority is entitled to judgment as a matter of law, and seeking a determination that 11 U.S.C. § 525(a) does not prevent or preclude the Housing Authority from evicting the Debtor from the Property. (See Doc. ## 30, 31). Through its Motion, the Housing Authority argues that the anti-discrimination provisions of 11 U.S.C. § 525(a) do not apply to the Lease because the Lease is not an enumerated governmental benefit thereunder, and because the Housing Authority is not pursuing eviction solely because the Debtor filed for bankruptcy, was insolvent, or for failure to pay a debt subject to discharge. (See Doc. # 31).

The Debtor filed a response to the Motion (the "Response") on January 17, 2014, along with an affidavit and brief in support. (See Doc. ## 34, 35, 36). Therein, the Debtor argues that 11 U.S.C. § 525(a) applies to public housing leases and thus prevents the Housing Authority from evicting the Debtor because the Housing Authority is a governmental unit, the Debtor's public housing tenancy is a "similar grant" protected by section 525(a), and the eviction action is taken solely because the Debtor filed for bankruptcy, was insolvent, or failed to pay a debt that is subject to discharge in bankruptcy. (See Doc. # 36).    Additionally, the Debtor asserts that the rejection under section 365 of the Bankruptcy Code, and breach, of the Lease does not impede the Debtor's right under section 525 to retain the housing, as section 365 is not relevant to the applicability of section 525 in this case. (See id. at p. 32).

The Debtor also avers that if she and her family were evicted from the Property, they "would be compelled to seek assistance from one of the few family emergency shelters in Allegheny County which allow women and older boys to be sheltered together," and "those shelters have limited available space and admission to them would not be assured." (Doc. # 35, ¶ 16).

A hearing was held on the Motion on February 10, 2014. The matter is now ripe for decision.

## II.

Pursuant to Fed. R. Civ. P. 56(c), made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7056, summary judgment is mandated when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "On summary judgment the inferences to be drawn from the underlying facts contained in (the moving party's) materials must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 1609, 26 L. Ed. 2d 142 (1970) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, (1962)). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, though the non-moving party must make a showing sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment under Rule 56 "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A fact is "material" for purposes of Rule 56(c) if, under the applicable substantive law, it is "outcome determinative." Id. at 247-48. An issue is "genuine"

for such purposes if, based on the evidence presented, a reasonable jury could find in favor of the non-moving party on that issue. Id.

Thus, to be successful on its Motion for Summary Judgment, the Housing Authority must persuade this Court that there is no genuine issue as to any material fact, and that the Housing Authority is entitled to judgment as a matter of law. For the reasons set forth more fully below, the Court finds summary judgment inappropriate as genuine issues of material fact have been presented to this Court and the Housing Authority is not entitled to judgment as a matter of law.

### III.

At issue here is whether section 525 applies to the instant case, and, if it does apply, whether the Housing Authority's eviction action is pursued solely due to the Debtor's filing for bankruptcy, insolvency, or for failing to pay a debt subject to discharge. Because the Court finds that the Housing Authority is not entitled to judgment as a matter of law on the applicability of section 525, and because the issue of the Housing Authority's motivation for eviction presents the Court with a genuine issue of material fact, the Court denies the Motion.

### A.

The Housing Authority argues that it is entitled to summary judgment because section 525 does not apply in this case, first because its Lease with the Debtor is not a governmental benefit under section 525, and second because the Housing Authority is not pursuing eviction solely because the Debtor filed for bankruptcy, was insolvent, or for failure to pay a debt subject to discharge. In response, the Debtor argues section 525 is applicable and prohibits a public housing authority from revoking federal subsidized public housing benefits for owing dischargeable past due rents, relying on as support the legislative history of section 525 and the analysis in Stoltz

v. Brattleboro Housing Authority (In re Stoltz), 315 F.3d 80 (2nd Cir. 2002) (notably

the only Court of Appeals decision examining the applicability of section 525 to public

housing).  Because the Court finds that the right to public housing is a similar grant

to the other enumerated items protected in section 525, the Housing Authority

cannot be entitled to judgment as a matter of law on this issue.

Section 525 of the Bankruptcy Code provides:

> [A] governmental unit may not deny, revoke, suspend, or
> refuse to renew a license, permit, charter, franchise, or
> other similar grant to, condition such a grant to,
> discriminate with respect to such a grant against, deny
> employment to, terminate the employment of, or
> discriminate with respect to employment against, a person
> that is or has been a debtor under this title or a bankrupt
> or a debtor under the Bankruptcy Act, or another person
> with whom such bankrupt or debtor has been associated,
> solely because such bankrupt or debtor is or has been a
> debtor under this title or a bankrupt or debtor under the
> Bankruptcy Act, has been insolvent before the
> commencement of the case under this title, or during the
> case but before the debtor is granted or denied a discharge,
> or has not paid a debt that is dischargeable in the case
> under this title or that was discharged under the
> Bankruptcy Act.

11 U.S.C.A. § 525(a).  In order for 11 U.S.C. § 525(a) to apply, each of the following

three elements must be satisfied: (1) the prohibitive conduct must have been

performed by a governmental unit; (2) the governmental unit must have denied,

revoked, suspended, or refused to renew a license, permit, charter, franchise, or other

similar grant to the debtor; and (3) the action must have been taken solely because

the debtor filed for bankruptcy, was insolvent, or failed to pay a debt that is subject

to discharge.  In re Valentin, 309 B.R. 715, 720 (Bankr. E.D. Pa. 2004).

The Housing Authority concedes that it is a governmental unit (see Doc. # 31,

pp. 11-12), but argues that the Lease is not a "license, permit, charter, franchise or

similar grant" (id. at p. 12).  Looking to case law, definitions of "grant," and the

legislative history of section 525, the Court finds that the Lease is a "similar grant" for purposes of section 525.

The Court initially notes that most courts have given section 525(a) broad application. See, e.g., In re Rees, 61 B.R. 114, 119-22 (Bankr. D. Utah 1986) (citing In re The A.C. Williams Company, 51 B.R. 496, 500 (Bankr. N.D. Ohio 1985) (collecting cases); In re Goldrich, 45 B.R. 514, 521 (Bankr. E.D.N.Y. 1984) (collecting cases)). This Court particularly finds convincing the reasoning set forth in In re Stoltz, where a public housing lease was found to be an "other similar grant" within the meaning of section 525. 315 F.3d 80, 89-90 (2d Cir. 2002). See also Biggs v. Housing Authority of the City of Pittsburgh, No. 07CV0007, 2007 WL 654247 (W.D. Pa. Feb. 28, 2007) (adopting the reasoning set forth in Stoltz as "entirely consistent with the plain meaning of the language of section 525(a)" and finding a public housing tenant-debtor entitled to section 525(a)'s protection which "prevents the [housing authority] from seeking to evict [the tenant-debtor] from her residence based upon her non-payment of rent and the debt she accrued that is dischargeable or will soon be discharged in her Chapter 7 bankruptcy proceeding") (vacated as moot, In re Biggs, 271 Fed. Appx. 286 (3d Cir. 2008)).

Similar to the instant case, the debtor in Stoltz failed to pay rent under the terms of her lease with a public housing authority, and filed for chapter 13 bankruptcy protection after the housing authority commenced eviction proceedings against her. Id. at 84. The debtor had filed a motion to assume the lease, which was mooted after she converted her bankruptcy case to one under chapter 7. Id. at 85. Thereafter, the bankruptcy court granted the housing authority's motion to modify the automatic stay, permitting the housing authority to proceed with its eviction action against the debtor for failure to pay past due rent. Id. at 86. The debtor

-10-

appealed to the district court, which reversed the bankruptcy court's decision and reinstated the automatic stay, "concluding that section 525 prohibits a public housing authority from evicting a tenant, even though section 365 requires a debtor or bankruptcy trustee to cure defaults in order to assume an unexpired lease." Id. After the housing authority appealed the district court decision, the Court of Appeals for the Second Circuit affirmed the district court's opinion, finding section 525(a) protects debtor-tenants from eviction on the basis of nonpayment of discharged prepetition rent. Id. at 95.

Because the term "other similar grant," is not defined by the Bankruptcy Code, the Stoltz court referenced and relied upon the definition of "grant" enunciated in Black's Law Dictionary and Webster's Collegiate Dictionary to determine that the statutory term does in fact include public housing leases.  Black's Law Dictionary defines "grant" as "[a]n agreement that creates a right or interest in favor of a person or that effects a transfer of a right or interest from one person to another. Examples include leases, easements, charges, patents, franchises, powers, and licenses." BLACK'S LAW DICTIONARY, (9th ed. 2009).  "Grant" is defined in Merriam Webster's Collegiate Dictionary "a transfer of property by deed or writing." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 507 (10th ed. 2000).  Relying in part on these definitions, the Stoltz court determined that "a public housing lease is a grant by which a public housing authority conveys to a public housing tenant the right to use and occupy public housing in exchange for rent." 315 F.3d at 89-90.

This Court is further persuaded by the Stotlz court's analysis of section 525(a)'s legislative history, which Stoltz found to "fully support[ the] interpretation of 'other similar grants' as inclusive of public housing leases." 315 F.3d at 92. See also U.S. v. Gregg, 226 F.3d 253, 257 (3rd Cir. 2000) ("Where the statutory language does

not express Congress's intent unequivocally, a court traditionally refers to the
legislative history and the atmosphere in which the statute was enacted in an attempt
to determine the congressional purpose."). The legislative history of section 525
provides:

> [T]his section is additional debtor protection. It codifies the
> result of Perez v. Campbell . . . which held that a state
> would frustrate the Congressional policy of a fresh start for
> a debtor if it were permitted to refuse to renew a drivers
> license because a tort judgment resulting from an
> automobile accident had been unpaid as a result of a
> discharge in bankruptcy. The Section is not exhaustive.
> The enumeration of various forms of discrimination against
> former bankrupts is not intended to permit other forms of
> discrimination. The courts have been developing the Perez
> rule. This section permits further development to prohibit
> actions by governmental or quasigovernmental
> organizations that perform licensing functions, such as a
> state bar association or a medical society, or by other
> organizations that can seriously affect the debtors'
> livelihood or fresh start.

S.REP. No. 989, 95th Cong., 2d Sess. 81 (1978), reprinted in 1978 U.S.CODE CONG.
& ADMIN. NEWS 5787, 5867; H.R.Rep. No.595, 95th Cong., 1st Sess. 366-267
(1977); reprinted in 1978 U.S. CODE CONG. & ADMIN. NEWS 5963, 6322-6323. The
history of section 525(a) highlights its notable breadth: it applies to any governmental
unit; it covers not only licenses, but also permits, charters, franchises, and other
similar grants; and it applies regardless of whether the governmental unit involved is
the creditor whom the debtor failed to pay or a grantor conditioning a grant on the
debtors' satisfaction of a discharged debt owed to a third party.

Although the statute is broad, the Stoltz court noted that the "common
qualities of the property interests protected under section 525(a), i.e., 'license[s],
permit[s], charter[s], franchise[s], and other similar grants,' are that these property
interests are unobtainable from the private sector and essential to a debtor's fresh
start." 315 F.3d at 90. This Court agrees with Stoltz that a subsidized public

-12-

housing lease is a "similar grant" under section 525(a), as it is largely unobtainable from the private sector and is also essential to a debtor's fresh start. This Court's conclusion is particularly acute since the debtor's leasehold interest is an integral part of, and is inextricably intertwined with, the government's subsidy of her rent.

The Court's conclusion is also consistent with one of the fundamental goals of bankruptcy relief—that is to afford a "fresh start" to honest, but unfortunate, debtors. The "fresh start" is augmented through various provisions of the bankruptcy statutes. For example, the home plays a unique role with respect to a debtor's "fresh start" in bankruptcy given the Bankruptcy Code's generous homestead exemption as set forth in 11 U.S.C. § 522(d)(1). The Bankruptcy Code also recognizes the importance of government subsidized benefits to debtors, as reflected in the anti-discrimination provisions of section 525 of the Code. As recognized by the Second Circuit Court of Appeals, Section 525(a) "was enacted to ensure that governmental units do not deprive debtors of grants that are essential to a debtor's fresh start." Stoltz, 315 F.3d at 91. Thus, a debtor's "fresh start would be thwarted" if a public housing authority were permitted to evict debtors "on the basis of nonpayment of debts discharged in bankruptcy." Id. at 94.

Further, the Court understands that many debtors are in and rely on public housing, and that these tenancies are the proverbial castles for such debtors. See, e.g., In Re Whitsett, 163 B.R. 752, 755 (Bankr. E.D. Pa. 1994) (the tenancy in federally subsidized housing may be a debtor's "single most significant material possession"). Moreover, "an evicted debtor-tenant, along with any dependents, would quite possibly become homeless—a status not conducive to economic survival." Stoltz, 315 F.3d at 90 (citations omitted). As such, "[a] debtor-tenant's entire economic status therefore is dependent on his or her current public housing lease. . .

-13-

Eviction-induced homelessness would seriously affect the debtors' livelihood and fresh start." Id. (citations omitted).

The legislative history of section 525, combined with various courts' interpretation of its applicability to public housing leases, as well as the purpose and intent behind bankruptcy to provide debtors with a fresh start, all convince this Court that section 525(a) does in fact prevent the Housing Authority from terminating the Debtor's Lease based on her failure to pay a discharged debt. The Housing Authority is thus not entitled to judgment as a matter of law on this issue.

**B.**

The Housing Authority further asserts that it is entitled to judgment as a matter of law regarding the applicability of section 365. The Housing Authority argues that the lease was rejected and is thus deemed to have been breached pre-petition under section 365, and the Housing Authority is therefore able to pursue state-law eviction action against the Debtor, thereby averring that section 365 should trump section 525's anti-discrimination provision. The Court, finding Stoltz persuasive on this point as well, rejects the Housing Authority's argument and determines that section 525, as the more specific statute, should control.

Section 365 "equates rejection of an unexpired lease with prepetition breach of the lease, thus enabling creditors to pursue state law remedies, including eviction, for prepetition breach of rejected leases." In re Stoltz, 315 F.3d at 83-84. Pursuant to section 365, a debtor is required to cure prepetition defaults as a precondition of assuming an executory contract, and if a chapter 7 trustee does not assume or reject an unexpired lease within sixty days of the order for relief, then the lease is deemed rejected under section 365(d)(1). See 11 U.S.C. § 365. "Upon rejection, the lease is no longer part of the bankruptcy estate, and the non-debtor party to the contract may

generally pursue state law remedies for breach of contract, including eviction for
breach of lease." In re Stoltz, 315 F.3d at 86.  The Stoltz court recognized a potential
conflict between section 365 and section 525 "where a debtor seeks to retain an
executory contract or unexpired lease with a governmental unit after having her debt
discharged in bankruptcy, but without curing the related prepetition defaults." Id. at
86.    In such a case, as here, sections 525(a) and 365 "therefore cannot
simultaneously be given their full effect." Id. at 92.

It is a "basic principle of statutory construction that a specific statute . . .
controls over a general provision." HCSC-Laundry v. United States, 450 U.S. 1, 6,
101 S.Ct. 836, 839 (1981).  Because section 525(a) is more specific than section 365,
the Court finds that section 525(a) controls over section 365 in a public housing
context.

Focusing on the meaning of sections 525(a) and 365 in the subsidized public
housing context leads to the conclusion that section 525(a) is the more specific
statute.  While "section 365 indicates that landlords (in general) may evict debtor-
tenants for nonpayment of discharged prepetition rent," section 525(a) "specifically
prohibits landlords who are also governmental units from evicting debtor-tenants
solely because of nonpayment of discharged prepetition rent." In re Stoltz, 315 F.3d
at 93.  See also Curry v. Metro. Dade Cnty. (In re Curry), 148 B.R. 966, 972 (S.D. Fla.
1992) (holding that the Bankruptcy Code's more specific section 525(a) trumps the
more general section 365); In re Aikens, 503 B.R. 603 (Bankr. S.D.N.Y. 2014)
(applying Stoltz to find section 525 more specific than both sections 365 and
362(b)(22), which apply "to all landlord and tenant relationships, public and
nonpublic alike," while section 525(a) "applies to the subset of such relationships that
are with governmental units alone").    Thus, because "section 365 applies to all

landlords, whereas section 525(a) applies only to landlords which are also governmental units," section 525 is the more specific statute.  In re Stoltz, 315 F.3d at 93.

Further, a rejected lease for a residential real property does not terminate the lease.  See In re Stoltz, 315 F.3d at 86 n.1 ("Rejection . . . is not the same as termination. . .  A rejected lease is treated as if the debtor breached it immediately prior to the petition date."); In re Lavigne, 114 F.3d 379, 386-87 (2nd Cir. 1997) ("Rejection is not the power to release, revoke, repudiate, void, avoid, cancel or terminate or even to breach, contract obligations.  Rather, rejection is a bankruptcy estate's election to decline a contract or a lease asset."); In re Valentin, 309 B.R. 715, 718 (E.D. Pa. 2004) ("Rejection has no impact on a contract's existence and, as a result, a contract is not deemed to be terminated by virtue of a rejection. 'Termination' is a concept that determines the viability of a contract and is a matter of applicable state law.  Thus, when a lease is rejected, it is still a viable contract.") (internal citations omitted).  All rejection does is remove the lease from property of the estate.  The debtor retains an interest, protected by applicable law, including section 525.

The Stoltz court further noted that "[g]iving section 525(a) its full effect . . . will only marginally abbreviate the benefit [the public housing authority] receives under section 365," as neither the debtor's discharge nor section 525(a) diminishes the debtor's obligation to pay postpetition rent, and the Code expressly prohibits debtors from receiving another discharge under bankruptcy for another eight years.  In re Stoltz, 315 F.3d at 94; 11 U.S.C. § 727(a)(8).  Because the Housing Authority retains the ability to pursue eviction of the Debtor if she breaches her lease by postpetition

-16-

default, the Housing Authority's creditor-interests remain protected in light of this holding.

Thus, summary judgment cannot be granted to the housing authority on this point of law; in fact, the Court finds in favor of the Debtor on this point and determines that public housing is a "similar grant" under Section 525.

C.

The Court also finds that the Motion for Summary Judgment must be denied because the Debtor presented this Court with a genuine issue of material fact; specifically, whether the Housing Authority sought the Debtor's eviction "solely" due to a failure to pay a dischargeable debt.

Section 525 prohibits termination or withholding of a benefit only when such action is "solely" on account of the bankruptcy. 11 U.S.C. § 525(a). The Supreme Court has held that in order for a governmental unit's action to be "solely because" of the failure to pay a dischargeable debt under section 525, "the failure to pay a dischargeable debt must alone be the proximate cause of the cancellation—the act or event that triggers the agency's decision to cancel, whatever the agency's ultimate motive in pulling the trigger may be." Federal Communications Comm'n. v. NextWave Personal Communications, Inc., 537 U.S. 293, 301-302 (2003). Looking at the context of public housing, the United States Bankruptcy Court for the Eastern District of Pennsylvania has held that, even "if the housing authority proffered several compelling reasons to evict a debtor, in addition to the failure to pay pre-petition rent, these reasons would be of no import so long as it is established that the event that caused the housing authority to evict the debtor was the failure to pay the pre-petition rent." In re Valentin, 309 B.R. 715, 722 (Bankr. E.D. Pa. 2004). Thus, "if the housing authority would not have sought to evict but for the failure to pay prepetition

-17-

rent, then the action taken by the housing authority is 'solely because' of the failure to pay a dischargeable debt." Id.

The Housing Authority has contended that its anticipated eviction is based on additional conduct of the Debtor, alleging that she did not complete the Re-Determination mandated by her Lease and misrepresented her family income to the Housing Authority in an effort to avoid the payment of additional rent. (See Doc. # 1, ¶ 39; Doc. # 31, p. 7; Case No. 09-21638, Doc. # 96, ¶ 24). If true, such conduct could constitute a basis by which the Housing Authority could avoid the strictures of section 525.

For example, in In re Smith, the United States Bankruptcy Appellate Panel of the Eighth Circuit held that termination of a debtor's public housing benefits was not done solely because of nonpayment of a dischargeable debt, but rather because the debtor had committed fraud by failing to report income. Smith v. St. Louis Housing Authority (In re Smith), 259 B.R. 901 (8th Cir. B.A.P. 2001). The debtor in Smith was required to report her income to the public housing authority which provided her with public housing benefits. Id. at 903. Upon discovering that the debtor had failed to report her income as required, the public housing authority sent a letter to the debtor "advising her that it had discovered the unreported income" and that "if she failed to pay the amount due, her benefits would be terminated." Id. After failing to pay the amount due, the housing authority sent a letter to the debtor's attorney, "indicating that due to her failure to report income for two years," her benefits would be terminated. Id. The debtor then filed a chapter 7 bankruptcy petition. Id. Subsequently, the housing authority then sent another letter to the debtor's attorney "asserting that the benefits had been terminated due to the debtor's failure to report income." Id. The housing authority filed a motion for relief from stay which the

-18-

bankruptcy court granted, and the debtor appealed asserting a violation of section 525. Id. The appellate panel affirmed the bankruptcy court's ruling, finding that the housing authority was not barred from terminating the debtor's benefits under section 525, because "the basis for her termination was the failure to report income." Id. at 906 (emphasis removed).

The case at hand is easily distinguishable from Smith. In Smith, the housing authority clearly and continuously expressed that its motivation for termination was the debtor's "fraudulent conduct" and not solely a failure to pay a dischargeable debt. Id. In contrast, the Housing Authority in the instant case predominantly asserted that the basis for terminating the Debtor's housing benefits was a failure to pay rent. For example, the Housing Authority's Termination Notice dated November 17, 2008, Magisterial Eviction Complaint dated December 17, 2008, Common Pleas Eviction Complaint dated February 2, 2009, and first *Motion for Relief from Stay* dated November 10, 2011 all cited solely the Debtor's failure to pay past rent as the basis for termination of the Lease. The Housing Authority made no mention of any other basis for termination until September 18, 2012, when the Housing Authority stated that "the failure of the Debtor to undergo Redetermination for her 2013 occupancy constitutes a material breach thereof" in the second *Motion for Relief from Stay*. (Case No. 09-21638, Doc. # 96, ¶ 24).

Other questions do abound as to the Housing Authority's motivations for the Debtor's eviction. The fact that the Housing Authority never challenged the Debtor's right to a discharge under the fraud provisions of Section 523 of the Code also casts doubt on the Housing Authority's recent allegations of the Debtor's misconduct as a basis for termination. But, because the Housing Authority did begin to raise the issue of the Debtor's misconduct as of September 18, 2012, albeit four years after the

Housing Authority began to pursue termination of the Debtor's housing benefits, a question of fact does exist as to the bona fides of the Housing Authority's contemplated actions.[1]  Summary judgment therefore is not appropriate and a trial shall be set on this narrow issue.

*[Remainder of Page Intentionally Left Blank]*

---

[1] The Court also notes that the Housing Authority's contention of unfairness in permitting the Debtor to have continued to incur unpaid rent during the pendency of her bankruptcy case is undermined by the Housing Authority's failure to raise such an issue until late in this case. Towards this point, the Court notes that the Housing Authority did not request relief from stay until November 10, 2011. However, it then subsequently withdrew the motion on its own volition.  The Housing Authority also did not file any objections to the Debtor's plans dated April 3, 2009, December 2, 2009, September 21, 2010, or November 23, 2011.  The Housing Authority could have been more active in the Debtor's Chapter 13 case and asked earlier for adequate protection, as they could have under sections 361 and 362 of the Bankruptcy Code. Not having prosecuted such a request, its complaint of non-payment at this late hour rings hollow to a certain degree.

**IV.**

For the reasons set forth above, the Court concludes that the Housing Authority is not entitled to judgment as a matter of law, as section 525(a)of the Bankruptcy Code protects debtors like the one in the instant case from eviction on the basis of nonpayment of discharged prepetition rent.  To the extent that sections 525(a) and 365 of the Bankruptcy Code conflict, the rules of statutory construction and sound bankruptcy policy dictate that provisions of section 525(a) must prevail. Because questions of fact exist as to the Housing Authority's motivation for evicting the Debtor, summary judgment is not appropriate and a trial shall be set on this remaining issue.   An appropriate order will be entered consisted with this Memorandum Opinion.

**Date:**  **May 20, 2014**                          **/s/  Jeffery A. Deller**
                                                                     **JEFFERY A. DELLER**
                                                                     United States Chief Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**
        Christopher L. Borsani, Esq.
        Michael A. Shiner, Esq.
        Kathryn E. McKee, Esq.
        Eileen D. Yacknin, Esq.

FILED

MAY 20 2014

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA